UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| THERESA JOHNSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:19-cv-00457-AGF |
| | ) |
| LAW OFFICES OF JEFFREY LOHMAN, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants Veritas Legal Plan, Inc. ("Veritas") and Law Offices of Jeffery Lohman, P.C.'s ("Lohman") motion (ECF No. 32) for summary judgment; Plaintiff Theresa Johnson's cross motion (ECF No. 33) for partial summary judgment; and Defendants' motion for sanctions pursuant to Federal Rule of Civil Procedure 11 (ECF No. 42).   For the reasons set forth below, the Court will grant Defendants' motion for summary judgment, deny Plaintiff's cross motion, and deny Defendants' motion for sanctions.

**BACKGROUND**

For the purposes of the motions before this Court, the record establishes the following facts.   In 2017, Plaintiff saw a television advertisement for consumer debt services offered by Burlington Financial Group, LLC ("Burlington").   Plaintiff thereafter retained Burlington to assist her with managing her debt.   Plaintiff paid Burlington approximately $2,500 in total; this payment was made via monthly deductions of roughly $391 from Plaintiff's checking account.

Burlington represented that if Plaintiff needed the assistance of a lawyer to advise her about dealing with her delinquent debts or about issues associated with consumer law, Burlington could provide Plaintiff with an attorney through the "Veritas Legal Plan." Veritas describes itself as a "prepaid legal plan . . . which provides defense coverage for creditor lawsuits."   ECF No. 32-2 at 2.

Burlington contracted with Veritas for Veritas to provide its prepaid legal plan to Burlington's clients in exchange for monthly compensation from Burlington.   Pursuant to its agreement with Veritas, Burlington paid Veritas $20 per month (later lowered to $15 per month), and Veritas put a portion of those fees into a reserve account for future claims by clients for specified legal services.[1]  Veritas, in turn, maintained a referral relationship with Lohman, whereby Veritas provided client information to Lohman in order for Lohman to assist those clients.

Plaintiff requested that Burlington help with her creditors, and Burlington informed Veritas of Plaintiff's request.   On or about February 28, 2018, Veritas provided Plaintiff with contact information for Lohman.   Two non-attorney customer service representatives employed by Lohman thereafter communicated with Plaintiff on several occasions and advised Plaintiff that Plaintiff should tell her creditors to stop calling and should also keep a log of any calls that continued so that Lohman could potentially bring a federal Telephone Consumer Protection Act ("TCPA") lawsuit on Plaintiff's behalf.   Plaintiff testified in her deposition in this case that Lohman did not

---

[1]   These services included defense against lawsuits by creditors or advice from counsel regarding federal consumer protection statutes.   *See* ECF No. 35-2.

2

make any representations regarding improving Plaintiff's credit record, history, or rating, and did not counsel Plaintiff on any issues relating to credit repair.

Lohman did not receive any monetary compensation from Plaintiff, Veritas, Burlington, or anyone else for the advice it provided to Plaintiff. Plaintiff believed that the Lohman customer service representatives with whom she spoke were her local network attorneys under the Veritas Legal Plan, which she associated with Burlington.

Neither Lohman's managing partner, Jeffrey Lohman, nor any other attorney employed by Lohman is a member of the Missouri Bar. However, two Lohman attorneys are admitted to practice in the United States District Court for the Eastern District of Missouri.

According to Plaintiff, Defendants did not prevent Plaintiff's creditors from pursuing her and did not resolve the debt problems for which she paid Burlington. Therefore, Plaintiff filed suit in state court on June 14, 2018, originally naming Burlington and Lohman as Defendants. Plaintiff alleged that Burlington violated the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. § 407.010 (Count I); and that Burlington and Lohman both violated the Credit Repair Organizations Act ("CROA"), 15 U.S.C. § 1679b (Count II); violated the Missouri statute governing credit service organizations ("CSOs"), Mo. Rev. Stat. § 407.635 (Count III); and engaged in the unauthorized practice of law.

After the lawsuit was filed, Plaintiff reached a settlement with Burlington, and Plaintiff voluntarily dismissed her claims against Burlington in September of 2018. In connection with that settlement, Burlington provided Plaintiff with a full refund of her

payments plus an additional $1,000, such that Plaintiff recovered approximately $3,500 in total from Burlington.   Plaintiff separately recovered through her bank two months' worth of the payments made to Burlington (approximately $782).

On November 29, 2018, Plaintiff filed an amended complaint (the operative complaint here), which dropped Burlington and instead named Veritas and Lohman as Defendants.   Plaintiff asserted her MMPA claim (Count I) against both Veritas and Lohman; and she asserted her CROA (Count II), Missouri CSO (Count III) , and unauthorized-practice-of-law (Count IV) claims against Lohman only.   Plaintiff seeks actual damages in an amount no less than the amount that she paid to Burlington, punitive damages, costs, and attorneys' fees.

Defendants removed the action to this Court on March 15, 2019, on the basis of diversity jurisdiction, as well as federal-question jurisdiction with respect to the CROA claim.[2]

## ARGUMENTS OF THE PARTIES

**Motions Summary Judgment**

Defendants argue that summary judgment is warranted on each of Plaintiff's claims against them.   As to the MMPA claim, Defendants argue that summary judgment

---

[2]   Defendants plausibly pled, and Plaintiff does not dispute, that the requirements for diversity jurisdiction, including the amount in controversy, are met here. *See Pirozzi v. Massage Envy Franchising, LLC*, 938 F.3d 981, 983 (8th Cir. 2019) ("[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.") (quoting *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81 (2014)). Moreover, the Court would have supplemental jurisdiction over the state-law claims, which form part of the same case or controversy as the federal CROA claim.   *See* 28 U.S.C. § 1367.

4

is warranted because Plaintiff did not purchase any merchandise from Defendants but, rather, purchased non-merchandise credit services from Burlington, a separate entity, and because Plaintiff did not suffer an ascertainable loss resulting from any misrepresentation by Defendants. As to Plaintiff's claims under the federal CROA and Missouri's CSO statute, which are asserted against Lohman only, Lohman argues that it is not a credit repair organization or a credit service organization and that it did not commit any prohibited act under these statutes. Regarding the unauthorized-practice-of-law claim, Lohman contends that Plaintiff does not have a private cause of action under the applicable Missouri statute, and that, in any event, Lohman did not engage in the "practice of law" by providing free advice to Plaintiff to tell her creditors to stop calling her. Finally, Defendants argue that each of Plaintiff's claims fail for the additional reason that Plaintiff has no damages, having been made whole by Burlington.

In response, Plaintiff argues that genuine disputes of material fact preclude the entry of summary judgment on her first three claims, and that Plaintiff is entitled to summary judgment on the last claim. As to the MMPA claim, Plaintiff contends that a rational jury could find that Plaintiff purchased services from Defendants, through Burlington, and that Defendants engaged in prohibited activities by failing to inform Plaintiff that Lohman was not licensed to practice law in Missouri. Regarding her claims under the CROA and Missouri's CSO statute, Plaintiff argues that Lohman could be considered both a credit repair organization and a credit service organization based on its advice to Plaintiff regarding her creditors and that Lohman engaged in prohibited acts

5

under these statutes because Lohman's attorneys and customer service staff were not authorized to practice law in Missouri and also provided poor advice.

With respect to the unauthorized-practice-law-claim, which is also the basis of Plaintiff's cross motion for partial summary judgment, Plaintiff argues that the undisputed evidence satisfies all elements of her claim.   Specifically, Plaintiff argues that she has a cause of action against Lohman for the unauthorized practice of law; that Lohman engaged in the practice of law or law business by advising Plaintiff on how to stop creditor calls and also by attempting to solicit TCPA cases from Plaintiff; that "Plaintiff provided Lohman with valuable consideration in the form of potential lawsuits that Lohman might be able to bring on Plaintiff's behalf" (ECF No. 36 at 21); and that Lohman was not authorized under Missouri law to practice law in Missouri.

Finally, Plaintiff argues that she has actual damages in the form of the temporary loss of use of her funds for several months before her settlement with Burlington was finalized; the attorneys' fees incurred to bring the instant suit; and emotional distress in the form of anxiety, frustration, and worry.

**<u>Defendants' Motion for Rule 11 Sanctions</u>**

In their motion for sanctions, Defendants argue that Plaintiff's counsel violated Rule 11 by maintaining in this Court, following removal, the amended complaint, which Defendants assert has no basis in fact and is contrary to Plaintiff's sworn testimony at her deposition in this case.   Defendants specifically argue that counsel had no factual basis to allege that Lohman was paid from the monies that Plaintiff paid Burlington, or that

Plaintiff received legal advice from Lohman as to how to handle state court litigation in Missouri or how to handle her debt or credit issues.

In opposition, Plaintiff's counsel argues that the record as a whole supports the allegations noted above because it can be inferred from the record that Defendants jointly engaged in an enterprise with Burlington to provide legal services in exchange for Plaintiff's payments and that Lohman advised Plaintiff how to deal with her creditors.

## DISCUSSION

### Summary Judgment

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he burden of demonstrating that there are no genuine issues of material fact rests on the moving party," and the court must view "the evidence and the inferences which reasonably may be drawn from the evidence in the light most favorable to the nonmoving party." *Allard v. Baldwin*, 779 F.3d 768, 771 (8th Cir. 2015).

In opposing summary judgment, a plaintiff may not "simply point to allegations" in the complaint, *Howard v. Columbia Public School District*, 363 F.3d 797, 800 (8th Cir. 2004), or "rest on the hope of discrediting the movant's evidence at trial," *Citizens Loan and Sav. Co. v. Weiser*, 621 F.2d 911, 913 (8th Cir. 1980). Rather, the plaintiff "must identify and provide evidence of specific facts creating a triable controversy." *Howard*, 363 F.3d at 800 (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."

7

*Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)).

Upon careful consideration, the Court concludes that summary judgment in favor of Defendants is warranted on each of Plaintiff's claims.

I.     MMPA

The MMPA makes unlawful "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale . . . of any merchandise in trade or commerce." Mo. Rev. Stat. § 407.020.1. "[A]ny person who 'suffers an ascertainable loss of money or property' as the result of an unlawful practice may file a civil lawsuit to recover actual and punitive damages, as well as attorney fees, from any person who has engaged in a method, act or practice declared unlawful by section 407.020." *Huch v. Charter Commc'ns, Inc.*, 290 S.W.3d 721, 725 (Mo. 2009) (citing Mo. Rev. Stat. § 407.025.1). But in order to recover, a plaintiff demonstrate "a causal connection between the ascertainable loss and the unfair or deceptive merchandising practice." *Owen v. General Motors Corp.*, 533 F.3d 913, 922 (8th Cir. 2008).

Viewing the record in the light most favorable to Plaintiff, Plaintiff cannot demonstrate that she suffered an "ascertainable loss of money or property as the result of" Defendants' alleged misconduct. Plaintiff alleges loss in the form of money paid to Burlington. But those payments were not caused by any alleged misconduct of Veritas or Lohman; rather, they were made pursuant to Plaintiff's agreement with Burlington,

8

entered before Plaintiff even encountered Veritas or Lohman, let alone was subject to any deceptive or unfair practice by them.  *Cf. Ford v. St. Louis Metro. Towing, L.C.*, No. 4:09CV0512TCM, 2010 WL 618491, at *13 (E.D. Mo. Feb. 18, 2010) (finding monthly insurance payments to be an ascertainable loss under the MMPA "to the extent those insurance payments were necessitated by any unfair practice by [the named defendant] and not to the extent they would have been due regardless of any such practice").

Plaintiff's other alleged losses, such as the loss of the use of her funds prior to her settlement with Burlington and emotional distress, are not "ascertainable loss[es] of money or property" under the MMPA.  *See id.* at *13-15 (rejecting as unascertainable under the MMPA a claim for damages based on "deprivation of the use and value of the vehicle, the delay in 'any recovery' due Plaintiffs under the insurance policy, and Plaintiffs' 'loss of time, effort and earnings capacity, humiliation and emotional distress'").[3]  Therefore, the Court will grant Defendants' motion for summary judgment on Plaintiff's MMPA claim without reaching Defendants' other arguments.

## II.     CROA and Missouri's CSO Statute

The purpose of the CROA is to provide prospective buyers of a credit repair organization's services with "the information necessary to make an informed decision" about such a purchase, as well as to "protect the public from unfair or deceptive

---

3     To the extent Plaintiff argues that the attorneys' fees she incurred in prosecuting this lawsuit constitute an "ascertainable loss," her assertion is without merit.  The MMPA permits courts to award attorneys' fees to a plaintiff who has successfully proven her claims.  Mo. Rev. Stat. § 407.025.1.  But to hold that such fees, incurred in every lawsuit, constitute an "ascertainable loss" under the statute would render the phrase meaningless.

9

advertising and business practices by credit repair organizations." 15 U.S.C. § 1679(b). The CROA defines "credit repair organization" as:

> any person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform (or represent that such person can or will sell, provide, or perform) any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of—
>
> (i) improving any consumer's credit record, credit history, or credit rating; or
>
> (ii) providing advice or assistance to any consumer with regard to any activity or service described in clause (i).

15 U.S.C. § 1679a(3)(A).

Likewise, Missouri's CSO statute prevents credit services organizations from making false or misleading representations, or engaging in fraud or deception, in connection with the offer or sale of their services. Mo. Rev. Stat. § 407.638(3)-(4). The statute similarly defines a credit services organization as:

> [A] person who, with respect to the extension of credit by others and in return for the payment of money or other valuable consideration, provides or represents that the person can or will provide any of the following services:
>
> (1) Improving the buyer's credit record, history or rating;
>
> (2) Obtaining an extension of credit for a buyer; or
>
> (3) Providing advice or assistance to a buyer with regard to subdivision (1) or (2) of this subsection.

Mo. Rev. Stat. § 407.637.1.

The Court agrees with Defendants that Lohman is neither a credit repair organization nor a credit services organization. Viewing the record in the light most favorable to Plaintiff, Lohman's advice to Plaintiff focused on stopping creditors from

10

calling her, not on improving Plaintiff's credit record, credit history, or credit rating, or on obtaining an extension of credit. Indeed, Plaintiff testified in her deposition in this case that Lohman did not make any representations regarding improving Plaintiff's credit record, history or rating and did not counsel Plaintiff on any issues relating to credit repair. *See Stout v. FreeScore, LLC*, 743 F.3d 680, 685 (9th Cir. 2014) (reasoning that courts must look to the "overall net impression" of an entity's communications with a consumer to determine whether the consumer could reasonably ascribe to it a message of improving her credit record, history, or rating for the purpose of a CROA claim).

Nor did Lohman offer its services "in return for the payment of money or other valuable consideration," as required under both the CROA and Missouri's CSO statute. *See* 15 U.S.C. § 1679a(3)(A); Mo. Rev. Stat. § 407.637.1. The undisputed evidence reflects that Lohman was not compensated by Plaintiff, Veritas, Burlington, or anyone else for its services to Plaintiff.

To the extent Plaintiff argues that Lohman received "valuable consideration" in the form of "potential lawsuits that Lohman might be able to bring on Plaintiff's behalf," Plaintiff has not cited and the Court has not found any case holding that such an attenuated theory of consideration could satisfy these statutes. The Court is simply not persuaded by Plaintiff's argument.

Finally, to the extent Plaintiff argues that Burlington is a credit repair organization or credit services organization and that Lohman should be held liable as an agent of Burlington, Plaintiff has not clearly articulated the basis for her agency argument or identified evidence in support of it. Moreover, Plaintiff has fully recovered for such

claims through her settlement with Burlington. Any further recovery from Lohman on these claims would be duplicative. *Ross v. Holton*, 640 S.W.2d 166, 173 (Mo. Ct. App. 1982) ("It is well settled in Missouri that a party cannot be compensated for the same injury twice.").

For these reasons, the Court will grant Defendants' motion for summary judgment on Plaintiff's claims under the CROA and Missouri's CSO statute.

### III.     Unauthorized Practice of Law

Missouri, by statute, prohibits the unauthorized practice of law or law business, and provides that such persons or entities who violate the statute "shall be subject to be sued for treble the amount which shall have been paid him or it for any service rendered in violation [of the statute]." Mo. Rev. Stat. § 484.020.2.

While the "judiciary is the sole arbiter of what constitutes the practice of law," the Missouri statute also contains statutory definitions that serve as an important "reference point" in guiding the court's determination. *See Hargis v. JLB Corp.*, 357 S.W.3d 574, 578 (Mo. 2011) (citation omitted). The statute defines "law business" as:

> the advising or counseling for a valuable consideration of any person, firm, association, or corporation as to any secular law or the drawing or the procuring of or assisting in the drawing for a valuable consideration of any paper, document or instrument affecting or relating to secular rights or the doing of any act for a valuable consideration in a representative capacity, obtaining or tending to obtain or securing or tending to secure for any person, firm, association or corporation any property or property rights whatsoever.

Mo. Rev. Stat. § 484.010.2.

Plaintiff contends that Lohman's customer service representatives' advice to Plaintiff to tell creditors to stop calling and their attempt to solicit TCPA cases for

12

Lohman to prosecute on behalf of Plaintiff constitute the practice of law or law business.

But the absence of any evidence of a fee charged by, or monetary compensation to, Lohman for these services is fatal to Plaintiff's claim. *See Binkley v. Am. Equity Mortg., Inc.*, 447 S.W.3d 194, 198 (Mo. 2014) ("The absence of any evidence in the record that the mortgage company charged a fee for the documents in question is fatal to the property owners' [unauthorized-practice-of-law] claim."); *accord Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 445 (8th Cir. 2014).

The primary cases relied upon by Plaintiff, *State ex inf. Miller v. St. Louis Union Tr. Co.*, 74 S.W.2d 348 (Mo. 1934), and *Bray v. Brooks*, 41 S.W.3d 7 (Mo. Ct. App. 2001), only emphasize this point. These cases hold that, while proof monetary compensation for the alleged legal services might not be necessary for prosecution of the *criminal* misdemeanor penalty under the Missouri statute for unauthorized practice of law, "*civil* liability for treble damages under § 484.020.2 may require a monetary charge for the legal services." *Bray*, 41 S.W.3d at 14 (emphasis added); *see also St. Louis Union Tr. Co.*, 74 S.W.2d at 355 ("Requirement . . . of [monetary] consideration would arise only, if at all, upon an attempted enforcement of the supplemental statutory liability for a money judgment.").

Further, even if non-monetary consideration could support a claim for civil liability, Plaintiff's assertion of consideration in the form "potential lawsuits that Lohman might be able to bring on Plaintiff's behalf" would not suffice.[4]

---

4    Plaintiff also contends that the Missouri statute "does not extinguish any individual's common law remedies arising out of the unauthorized practice of law" (ECF

13

For these reasons, the Court will grant Defendants' motion for summary judgment on Plaintiff's unauthorized-practice-of-law claim and will deny Plaintiff's cross motion on this claim.

**Rule 11 Sanctions**

The standard for sanctions under Rule 11 "is whether the attorney's conduct, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court."  *Adams v. USAA Cas. Ins. Co.*, 863 F.3d 1069, 1077 (8th Cir. 2017) (citation omitted).   The Rule's "main purpose is to deter baseless filings," and Rule 11(b) thus "imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, legally tenable, and not interposed for any improper purpose."  *Id.*

In this case, although Plaintiff's claims for damages do not survive summary judgment, they were not so baseless as to warrant the imposition of sanctions. Therefore, the Court will deny Defendants' motion for sanctions.

## CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendants' motion for summary judgment is **GRANTED**.   ECF No. 32.

---

No. 34 at 5), citing *Carpenter v. Countrywide Home Loans, Inc.*, 250 S.W.3d 697, 703 (Mo. 2008) in support.   However, the common law remedy discussed in *Carpenter* was for "money had and received," *id.*, which would also require proof of a fee or other monetary compensation for the alleged legal services.

**IT IS FURTHER ORDERED** that Plaintiff's motion for partial summary judgment and Defendants' motion for sanctions are both **DENIED**.   ECF Nos. 33 & 42.

**IT IS FURTHER ORDERED** that Defendants' motion to continue the trial setting is **DENIED as moot**.   ECF No. 45.

All claims against all parties having been resolved, a separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 10th day of June, 2020.